[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
BY THE DIVISION
After trial by jury, petitioner was convicted of Manslaughter First Degree with a firearm in violation of Connecticut General Statutes 53a-55a. The court imposed a sentence of 20 years, execution suspended after 15 years with five years probation and specific conditions.
The record shows that the victim was shot in the back as he ran from the petitioner. Before the attack, the victim had related to a companion that the petitioner had wanted to shoot him over a few dollars. Several witnesses of the shooting identified the petitioner as the assailant.
The petitioner's attorney urged the Division to take into account the family support the petitioner has received, especially from his mother. He also described the petitioner as a young man who has matured during his incarceration.
The assistant state's attorney argued the sentence was light considering the petitioner's bad PSI. In reviewing this sentencing the Division notes the remarks of the victim's brother, Grover Gardner. Feeling that they were eloquent, informative, and a heartfelt analysis of some of the ills of the inner city, we think they are worth repeating.
 "I grew up in the P.T. Barnum Apartments, as did my brothers and a number of other people that I know . . . . To the Judge of the Michael Stinson case, you're faced with an unpleasant dilemma. What sentence do you give to a person who has taken the life of another human being? He is a minority who has taken the life of another minority. Do you use the double standard on him? That is, a black who kills another black hasn't committed a serious crime and therefore shouldn't be given a severe penalty. By not giving him a severe penalty, you will allow him to enact, to reenact the crime of murder again. The question is: Will the next victim be you or one of your family members?" CT Page 8654
 The man whose case is at hand has done what he's been promising to do for quite a while. He's not in public schools because he's no longer allowed to attend. He has threatened teachers, as well as others. His threats of violence has finally manifested itself in the murder of Richard Gardner.
 Richard is no longer with us now because of a twisted personality that believed that an act of violence was to gain him what he thought was the duly deserved respect allotted to all underworld enforcers. The sick culture that this man admires places prominence and prestige on a person who can with the most ferocity or emotionless demeanor inflict the severest pain on another human being. This man thinks that what he — thinks that he should be praised for what he has done. He also feels that he hasn't committed a serious crime. After all, he's only killed a black man. He believes that he will only be given a token sentence. I hope that you prove him wrong. I hope that you prove to any murderer of an American that he will pay dearly for the most despicable of all crimes.
 . . . One of my major fears is that people with Stinson's type of personality will be allowed to roam the streets of inner city America, that is as long as it stays in the inner city. But a sad commentary for America. Within our cities as well as our suburbs, are some of our most brilliant minds. These young minds may never get a chance to be of any value to this country because they can be so easily snuffed out by unnecessary violence.
 This attitude is so prevalent in the inner city and has to be changed. A mind is, without a doubt, a terrible waste — a terrible thing to waste, and a life is a very priceless possession to lose. Let us not lose another. Let us stop these violent people from reeking havoc in our communities. Let us send a message to all the terrorists of the poor — No more! No more will we allow you to ruin our communities.
 . . . There are young minds that put vicious criminals on pedestals. They want to be like him. Can you CT Page 8655 imagine a cult whose admission criteria is based on the amount of insensitivity that can be shown to another human being? Imagine your worst nightmare and you can picture who this young man wants to emulate.
 . . . The sad reality is that both families have lost. What a tragedy! The tragedy is not unique here in Bridgeport. A young black man kills another. One goes to jail, the other to the cemetery. Two more gone. The cycle is repeated far too often for me. I pray there is an end to it."
In reviewing the sentence in this case in accordance with Conn. Practice Book 942, it cannot be found that the sentence imposed was inappropriate or disproportionate. The petitioner was convicted of an extremely violent offense and has a history of violence.
The sentence is affirmed.
Purtill, J. Norko, J. Klaczak, J.
Purtill, J., Norko, J., and Klaczak, J. participated in this decision.